UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LOIS ANN BAKER,

                Plaintiff,

v.                               **DECISION AND ORDER**
                                              13-CV-886S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1. In this action, Plaintiff Lois Baker challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act").

2. On October 19, 2010, Baker protectively filed for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, claiming she had been unable to work since July 1, 2010 due to diabetes mellitus. (R. 174-84.)[1] The applications were denied on December 28, 2010. (R. 64-65, 70-84.) Baker then requested a hearing, and a video hearing was held before ALJ Rosael Gautier on April 10, 2012. (R. 28-63.) Baker was represented by counsel at the hearing, at which she appeared and testified. (Id.)

3. The ALJ considered her applications *de novo* and, on May 16, 2012, issued a written decision finding Baker was not disabled under the Act. (R. 17-24.) The Appeals Council denied Baker's request for review in June 2013, at which time the

---

[1] Citations to the administrative record are designated as "R."

ALJ's decision became the Commissioner's final decision. (R. 5-8.) Baker commenced this action on August 30, 2013, challenging that final decision.

4. On January 24, 2014 and March 19, 2014, respectively, Baker and the Commissioner filed motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 9 and 13.) The motions were deemed fully briefed as of May 5, 2014, at which time this Court took the matter under advisement.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Baker v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v.

Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

8. The five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the

claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

9.     Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10.    Applying the sequential evaluation in the instant case, the ALJ found: (1) Baker had not engaged in substantial gainful activity since July 1, 2010 (R. 19); (2) her diabetes mellitus, controlled high blood pressure, asthma, depression and obesity were severe impairments within the meaning of the Act (id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (id.); (4) Baker had the residual functional capacity ("RFC") to perform a reduced range of light work (R. 20); and (5) she was capable of performing her past relevant work as a cashier (R. 23).

11.    Baker contends the ALJ failed to properly apply the treating physician rule, and that her credibility and RFC determinations are not supported by substantial evidence.

12. The Social Security Act recognizes a "treating physician" rule, entitling deference to the opinions of treating sources, including but not limited to medical doctors and psychologists. 20 C.F.R. § 404.1502. The regulations state that a treating source's opinion regarding the nature and severity of an impairment will be given "controlling weight" if the opinion is well supported by medically acceptable evidence and is not inconsistent with the other substantial evidence in the case record. Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (citing 20 C.F.R. § 404.1527(d)(2)). Conversely, the opinion of a treating physician is not afforded controlling weight where the treating physician's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts. Williams v. Comm'r of Soc. Sec., 236 Fed. Appx. 641, 643-44 (2d Cir. 2007); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted).

13. As noted, the ALJ concluded that Baker can perform a reduced range of light work. Specifically, she can lift, carry, push and pull 10 lbs. frequently and 20 lbs. occasionally, sit, stand and walk for 6 hours in an 8-hour workday, and perform simple, repetitive tasks, but is limited to performing postural activities on an occasional basis because of obesity, must be allowed a 15 minute break every 3 hours to have a snack and check her blood glucose, and should avoid unprotected heights, moving machinery and high concentrations of pulmonary irritants.

In arriving at this determination, the ALJ gave "greater weight" to Dr. Malaret, a non-examining medical expert who testified at the hearing, than to Dr. Wittig, Baker's primary care physician. Baker maintains the ALJ failed to provide good reasons for declining to give Dr. Wittig's opinion controlling weight, erroneously determined Wittig's opinion is inconsistent with his treatment notes, and failed to consider all the requisite factors for determining the weight to be given a treating physician's opinion.

With regard to the medical opinions, the ALJ wrote:

> Dr. Malaret's opinion about the claimant's [RFC] is slightly at odds with the residual functional capacity assessment by Dr. Wittig from June 2011 included in exhibit 6F. Dr. Wittig opined that the claimant could sit for 45 minutes to an hour at a time and for a total of 3 to 4 hours in an 8 hour workday. Dr. Wittig opined that the claimant could stand and walk for 30 to 45 minutes at a time and for a total of 3 to 4 hours in an 8 hour workday. Dr. Malaret opined that the claimant could sit, stand or walk for at least 6 hours in an 8 hour workday. Greater weight is given to Dr. Malaret's opinion because it is more consistent with Dr. Wittig's treatments notes and the claimant's activities of daily living. For example, Dr. Wittig reported that the claimant walked everywhere. Furthermore Dr. Malaret's opinion is also supported by [consultative medical examiner] Dr. Boehlert's opinions and findings. Dr. Boehlert did not find exertional limitation at all.

(R. 23.) This is an adequate statement of "good reasons" for declining to give Dr. Wittig's RFC assessment controlling or primary weight.

6

Baker next contends that Dr. Wittig's RFC assessment is consistent with his notes regarding her labile blood sugars, which were "still frustratingly labile" a few weeks after Baker received an insulin pump. (R. 402, 411, 423-24, 426, 436, 446, 450.) However, other than noting a ready fluctuation in glucose levels, Dr. Wittig's findings were unremarkable; he did not report any complications or exertional limitations/restrictions related to diabetes or any other impairment. Most recently, Dr. Wittig reported that Baker continues to do well with her insulin pump and her "blood sugars generally have been pretty good." (R. 450.) Having fully reviewed the treatment notes and opinions, the Court finds no error in the ALJ's determination that Dr. Malaret's less restrictive RFC is more consistent with the unremarkable findings contained in Dr. Wittig's treatment notes.

Also, the Court is satisfied that the ALJ considered Dr. Wittig's treatment relationship with Baker. She specifically acknowledged Baker "follows her diabetes with family physician Dr. Geoffrey Wittig." (R. 21.) And while the ALJ did not expressly note the length of that treatment relationship, she clearly reviewed Dr. Wittig's RFC assessment, which includes that information. In sum, the Court finds no reversible error in the ALJ's assessment of Dr. Wittig's opinion. Though it is by no means a routine occurrence, the Commissioner's regulations permit the opinions of nonexamining sources to override treating sources' opinions, provided they are supported by evidence in the record. See 20 C.F.R. §§ 404.1527(e), 416.927(e).

14.  Turning to the ALJ's credibility assessment, it is well-established that a claimant's testimony regarding pain and functional limitations is "entitled to great weight where . . . it is supported by objective medical evidence." Simmons v. United States

7

R.R. Ret. Bd., 982 F.2d 49, 56 (2d Cir. 1992) (finding claimant's allegations of persistent, severe pain were consistent with objective medical evidence of a severe disc injury). The ALJ, however, "is not required to accept the claimant's subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." Montaldo v. Astrue, No. 10-CV-6163, 2012 U.S. Dist. LEXIS 35250, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15, 2012) (citation and internal quotation marks omitted). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Rockwood v. Astrue, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009). If the ALJ's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y of Dept. of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

> The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged.
> . . . .
> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Rockwood, 614 F. Supp. 2d at 271 (internal citations and quotation marks omitted).

15.   Here, the ALJ acknowledged that Baker's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found her statements concerning the intensity, persistence and limiting effects of her symptoms were not credible. In particular, she found that "[t]he treatment record as a whole does not report marked limitations, and the claimant's treatment frequency does not reflect marked difficulties." (R. 23.)

Having reviewed the record, the Court is satisfied that the ALJ applied the proper legal standard in analyzing Baker' subjective complaints and the credibility assessment is supported by substantial evidence. Baker stated in a function report that she can do everything she did before her illness as long as she has her pump on at all times. (R. 241.) She then qualified her response, noting that she cannot do certain things if her sugar changes. (R. 242-44.) At the hearing, Baker testified that, on a typical day, she gets her children up for school, and does laundry, cooks, and does housework, but that her ability to engage in these activities depends on her "sugar ranges." Her attorney attempted to elicit testimony as to how often she is unable to perform such tasks, but received only vague responses. (R. 34-37.) As the ALJ noted, the record contains no objective evidence that Baker struggles with activities of daily living in the manner she suggests.

16.   Finally, Baker contends the ALJ erred in providing the vocational expert with a hypothetical that did not include Dr. Wittig's opinion regarding her exertional limitations and her own statements regarding her symptoms. Having found no reversible

9

error in the ALJ's assessment of Dr. Wittig's opinion or Baker's subjective complaints, remand on this basis is unwarranted.

    IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED;

    FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED;

    FURTHER, that the Clerk of the Court shall close this case.

    SO ORDERED.

Dated:  August 19, 2014
         Buffalo, New York

                              /s/William M. Skretny
                              WILLIAM M. SKRETNY
                              Chief Judge
                              United States District Court